FILED

99 MAR -9 PM 2:58

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 0 9 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DR. BARBARA MICHAEL, | } |
| Plaintiff | } |
| vs. | } CIVIL ACTION NO. |
| | } 97-AR-1957-S |
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, d/b/a UNIVERSITY OF ALABAMA at BIRMINGHAM, | } |
| Defendant | } |

**MEMORANDUM OPINION**

Presently before the court are two motions. Defendant, The Board of Trustees of the University of Alabama ("UAB"), filed a motion for summary judgment on all claims raised by plaintiff, Barbara Michael ("Michael"). For the reasons stated herein, the defendant's motion is due to be denied. UAB has also filed a motion to strike portions of Michael's declaration filed in opposition to summary judgment. This motion is due to be denied in part and granted in part.

**Background**

Barbara Michael, a female, was employed as an assistant professor in UAB's Anthropology Department from 1991 until May 31, 1996. Two males, Chris Taylor and Thomas McKenna, were hired as assistant professors by the Anthropology Department at the same time and essentially under the same circumstances as Michael. Roger Nance was

1

head of the Anthropology Department and was the immediate superior for Michael, Taylor, and McKenna. Nance reported to Dr. Tennant McWilliams, Dean of the School of Social and Behavioral Sciences.

Michael was initially awarded a 2 year contract, guaranteeing her employment from May of 1991 through May of 1993. Michael received a favorable annual review in May of 1993, and her contract was renewed until May of 1994. In May of 1994, Michael received a relatively favorable annual review, and her contract was again renewed until May of 1995.

At several points during the 1993-94 academic year, Michael was informed that she needed to increase her level of scholarly productivity. For example, in her annual review for May of 1994, Nance focused on Michael's publications and warned "[i]f your present level of productivity continues, I doubt that you will achieve tenure and promotion at the end of your sixth year here." In October of 1994, Nance sent Michael a memo stating that her contract would not be renewed unless she improved her level of publication and her cooperation with personnel.

In May of 1995, Michael was notified that her contract would not be renewed for another year. Michael spoke to McWilliams regarding her non-renewal and formally appealed the action, but a grievance committee upheld the decision.

Throughout her employment at UAB, Michael had or was perceived by Nance to have problems interacting with the support staff in the department. Nance reprimanded Michael on several occasions for administrative matters such as not giving the secretary enough notice to help prepare an exam, using the secretary's computer, and using the

dean's mimeograph machine.  Michael claims, and has presented some evidence to suggest, that Taylor and McKenna committed similar infractions but did not receive the type or degree of criticism she did. Nance testified that he had "conversations" with male faculty members who engaged in the same activities for which Michael was reprimanded, but he cannot recall the specifics of any conversation, nor does he provide any documentation that such conversations occurred.

Michael contends that she was treated less favorably than Taylor and McKenna throughout her employment at UAB and in her termination. Essentially, Michael argues that she, Taylor, and McKenna followed similar administrative practices but that Nance singled Michael out for criticism.  According to Michael, Nance counted these alleged administrative problems against her when determining the amount of her annual raise and when deciding not to renew her contract.  Because her male counterparts were not reprimanded for similar administrative transgressions, Michael was the only one for whom such matters counted as a negative.  Michael presented these concerns when she spoke to McWilliams regarding her non-renewal, expressing her opinion that she was being evaluated under different criteria than her male counterparts. Michael also related to McWilliams a number of incidents in which Nance allegedly harassed her because of her gender.

Michael claims the actions of UAB violated the Equal Protection Clause (via 42 U.S.C. § 1983), Title VII, and Title IX. Specifically, Michael claims that UAB discriminated against her because of her sex in determining her 1992 annual raise, that UAB discriminated against her because of her sex in deciding not to renew her contract, and that UAB

3

is liable for the harm she suffered while working in a hostile environment. Michael sues the Board of Trustees in its official capacity only.

## Discussion

Two preliminary issues are raised by UAB's answer and second amended answer to Michael's complaint. UAB's answer correctly notes that it is unclear whether Michael may seek monetary damages under 42 U.S.C.A § 1983. To the extent that Michael does seek monetary damages, such relief is clearly barred by the Eleventh Amendment. As a tenth defense, UAB's second amended answer states that Michael's claim for compensatory damages under Title VII against UAB is also barred by the Eleventh Amendment. This defense is implausible. Congress's abrogation of the States' Eleventh Immunity when enacting Title VII survives even the stringent test of *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114 (1996).

A. Discrimination Claims

In this case, the parties dispute the true motivation behind UAB's decision to reduce the amount of Michael's 1992 annual raise and its decision not to renew Michael's contract. Michael puts forth no evidence of direct discrimination, relying instead on the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

In its primary brief, UAB does not contest Michael's ability to make out a *prima facie* case. Instead, UAB tries to rebut the presumption of

4

discrimination created by the *prima facie* case by explaining that its actions were motivated by Michael's lack of scholarly productivity, a legitimate business reason for a university. UAB also puts forth a number of other arguments intended to weaken Michael's case or eliminate some of her claims altogether. These miscellaneous arguments raised by UAB can be handled quickly and will thus be addressed forthwith.

1. Miscellaneous Arguments

UAB makes an argument known as the "same-actor inference" in an attempt to defeat Michael's pretext arguments. The "same-actor inference" creates a presumption against discrimination when the person who fired a plaintiff is the same person who hired the plaintiff. UAB argues that Michael has no evidence sufficient to overcome the strong presumption, created by the same-actor inference, that its stated reason for not renewing her contract is pretext. Michael points out that the Eleventh Circuit recently cast some doubt on the strength of the presumption created by the same-actor inference, so that the mere fact that Nance hired and essentially fired Michael creates an inference of non-discrimination, but whether that inference shall be credited is a question for the finder of fact to decide.

UAB also argues that Michael's claim for discrimination in pay is barred by the statute of limitations. While it is true that the dispute focuses on a pay raise that occurred in 1992, annual raises at the University are calculated with an employee's current salary in mind. The effect of discrimination in a 1992 pay raise was therefore revisited on Michael in subsequent pay raises. The law is clear that this type of

5

situation qualifies as a "continuing violation" of anti-discrimination laws and is thus not barred by the statute of limitations. See *Calloway v. Partners Nat. Health Plans,* 986 F.2d 446 (11th Cir. 1993).

2. Evaluation based on Administrative Matters

In an effort to discredit UAB's proffered legitimate reason, Michael submits evidence of numerous instances in which Nance reprimanded her for acts that allegedly went unnoticed when performed by her male co-workers. UAB challenges Michael's allegations that she was treated differently than her male colleagues, arguing that Michael has failed to show that Taylor and McKenna were *not* reprimanded. UAB is essentially asking that Michael prove a negative in order to show pretext. UAB asks too much. Rather than asking that Michael do the impossible, UAB may rebut Michael's allegations by itself producing evidence of occasions where Nance chastised Taylor or McKenna for infractions similar to Michael's. UAB has not done so. Instead, the undisputed evidence shows that Michael was rebuked for administrative matters while her male colleagues were not.

While cooperation with office personnel is not an inappropriate evaluation tool *per se*, Michael puts forth evidence indicating that UAB does not include administrative matters in its list of appropriate evaluation criteria. McWilliams specifically testified that administrative matters fall outside the guidelines for non-renewal and declared that such matters would be inappropriate to consider in connection with a renewal decision. This evidence, combined with the fact that male employees were not penalized for any lack of interpersonal

6

skills, suggests a gender bias.

Whether Michael actually did or did not have trouble cooperating with the staff,[1] it is clear that Nance *perceived* her to have trouble and that he clearly counted this against her. For example, Michael submits Nance's deposition, in which Nance testified that he reduced the amount of the raise he had planned to give Michael because of an alleged altercation with the department's secretary. During the same deposition, Nance testified that he had never considered a similar matter in determining the raise of a male faculty member. This evidence, and more, demonstrates the existence of a genuine issue of material fact with respect to Michael's claim for discrimination in pay and precludes summary judgment on that count.

Michael also submits sufficient evidence to create a genuine issue of material fact as to her claim for non-renewal. For instance, a 1995 memorandum informed Michael that she must improve her "level of cooperation with Departmental and School personnel" in order to be considered for renewal in 1996-97. Nance's testimony at Michael's 1996 grievance hearing also suggests that he expected *more* publications from Michael *because of* her reported difficulty getting along with staff. This factual dispute precludes the entry of summary judgment in UAB's favor on Michael's claim of discrimination in the non-renewal decision.

3. <u>Michael's Record while at UAB</u>

---

[1] Michael submits excerpts of her 1996 grievance hearing in which Wilma Nappier, secretary for the Anthropology Department, testifies that she did not find Michael difficult.

7

Each party has presented a different list of what the three compared employees authored, published, and presented during the relevant time period, thus making any comparison akin to the task of comparing apples and oranges. Part of the difficulty stems from the parties' dispute over which materials count towards tenure progress. Michael argues that her record is comparable to that of her male counterparts when the departmental criteria are applied fairly to all three assistant professors. Michael claims, however, that Nance applied these criteria strictly to her, while taking a more liberal approach with McKenna and Taylor and allowing a wider range of materials to count towards their tenure progress.

Michael provides several examples to support her argument that Nance applied departmental standards differently. For instance, Michael argues that Nance counted as progress towards tenure work that Taylor had substantially completed prior to his arrival at UAB, while refusing to count such work on Michael's behalf. Michael points out that Nance also counted a wider range of publications towards tenure for McKenna and Taylor, while counting only articles (not book reviews or republications) for Michael. Another example Michael cites as evidence that different standards were applied to her involves a video-tape that Michael wrote and produced while at UAB. The video-tape represents the culmination of a substantial amount of work Michael completed before arriving at UAB. UAB characterizes Michael's argument as a complaint that UAB should have counted the video-tape as the equivalent of a book or major article. UAB complains that Michael asks the court to "second guess" the academic standards and rules created and applied by UAB. Michael claims that UAB

8

misstates her argument. Her argument does not predominantly rely on a dispute about the weight accorded her video-tape, as UAB suggests. Though she clearly feels that her tape should have been considered as more than the "hobby" Nance suggested it was, Michael discusses the tape to provide an example of UAB applying its criteria strictly to her, while applying these same criteria loosely to males.

In short, the evidence presented by both parties presents a conflicting picture of Michael's record at UAB. Because UAB has made Michael's record a central point in its defense, the factual disputes surrounding Michael's productivity or lack thereof prevent the entry of summary judgment in UAB's favor.

4. UAB's Interest in Productivity

In addition to her attempts to discredit UAB's statement that its decisions were based on Michael's record while at UAB, Michael also attempts to show that UAB's stated interest in increased or sustained productivity is merely pretext. To this end, Michael notes Nance's explanation that the non-renewal decision was based upon a desire to "go out and get somebody who could come in and be dynamic like our other assistant professors." Michael then points out that, despite this "desire," UAB did *not* hire a tenure-track faculty member to replace her.

UAB addresses this argument in its reply brief. Rather than countering Michael's pretext arguments, however, UAB uses its decision not to replace Michael with a tenure-track faculty member to challenge Michael's *prima facie* case. UAB claims that its failure to replace Michael prevents her from showing she was replaced by someone of equal

9

or lesser qualifications.  This argument is not terribly persuasive, however, since UAB realized that its budgetary constraints would prevent it from filling the vacancy created by Michael *after* she had been notified of the non-renewal.  At the time he made the decision not to renew her contract, Nance had no reason to believe that he would be unable to fill the position with a tenure-track faculty member.  Because the decision not to replace Michael occurred after Nance's decision not to renew Michael, it does not defeat Michael's *prima facie* case.

B.  Hostile Environment Claim

This is not a claim for sexual harassment, but a claim that Michael was harassed because she is a woman.  UAB correctly points out that anti-discrimination statutes do not recognize a cause of action for "general harassment."  Rather, the harassment must be based on sex, race, national origin, color, or religion.  UAB goes on, however, to cite a Seventh Circuit case as support for the proposition that there must be some reference to the protected characteristic, such as a racial slur, epithet or overtly racist or sexist conduct.  UAB essentially demands that Michael produce direct evidence of discrimination in order to prevail.  This is not the law.  Michael has no direct evidence, but she is entitled to rely on any inference tending to show gender discrimination.  Such an inference arises from the fact that she allegedly was the only employee in a predominantly male department to have been not only reprimanded for certain behavior, but berated for that behavior.  While this evidence may not carry the day at trial, Michael has produced enough evidence to survive UAB's motion for summary judgment.

10

Both parties devote some portion of their briefs to the affirmative defense created by the decisions in *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, 118 S.Ct. 2275 (1998). UAB contends that (1) Michael unreasonably failed to follow the prescribed procedures, which directed her to complain to either the Human Resources Management Relations Division or her supervisor, who was Nance, and that (2) even if Michael's talk with McWilliams qualifies as availing herself of this procedure, that McWilliams conducted an investigation into the alleged harassment sufficient to satisfy the requirement that it exercised reasonable care and acted to eliminate harassment when it occurred.

Michael correctly contends that UAB cannot avail itself of the affirmative defense because the policy UAB discusses is a *sexual* harassment policy, not a policy that covers *gender* harassment. She points out that the requirements of the sexual harassment policy have no applicability in a claim for gender discrimination. In the alternative, Michael contends that her conversation with McWilliams satisfies any requirement derived from UAB's sexual harassment policy that she speak to a supervisor. She acknowledges that McWilliams conducted an investigation, but claims that his investigation focused only on whether Nance gave appropriate consideration to Michael's vide-tape and did not address other complaints of harassment. McWilliams investigated those complaints much later, in preparation for Michael's grievance hearing. Michael contends that this is inadequate to satisfy an employer's obligation to prevent and eliminate harassment.

What both parties apparently fail to realize is that the affirmative

defense elucidated in *Burlington* and *Faragher* does not apply, since Michael suffered tangible employment action. *See Faragher*, 118 S.Ct. at 2293 ("When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages...").

**Conclusion**

As illustrated by the foregoing memorandum opinion, genuine issues of material fact exist that preclude the entry of summary judgment in UAB's favor on any count contained in Michael's complaint, unless Michael is seeking monetary damages under § 1983, something this court will assume she isn't. By introducing evidence that she was penalized for administrative matters while her male colleagues were not, by introducing evidence that the departmental criteria for work counting towards tenure were applied strictly to her but loosely to male colleagues, and by discrediting UAB's stated interest in productivity, Michael has produced sufficient evidence to survive summary judgment on both of her discrimination claims. Michael has also produced sufficient indirect evidence to produce an inference of discrimination and survive UAB's motion for summary judgment on her hostile gender environment claim.

An appropriate separate order will be entered.

DONE this 9th day of March, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE